IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STI TRUCKING, LLC, d/b/a STONE TRUCKING COMPANY,<br><br>         Plaintiff,<br>v.<br><br>SANTA ROSA OPERATING, LLC and SANTA ROSA DRILLING, LLC,<br><br>         Defendants. | Case No. 20-cv-0073-JFH-CDL |

**OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss for Lack of Personal Jurisdiction, filed by Defendant Santa Rosa Operating, LLC ("SRO"). Dkt. No. 13. For the reasons set forth below, the motion is granted.

**I.     BACKGROUND**

This case arises from a contract dispute between Plaintiff, STI Trucking, LLC d/b/a Stone Trucking Company ("STI") and Defendants SRO and Santa Rosa Drilling, LLC ("SRD").[1] *See generally* Dkt. No. 8. STI is an oversize and heavy haul carrier. *Id.* at 2. SRO is an oil and gas exploration and operating company. Dkt. No. 8-2 at 5. SRO hired Advanced Hydrostatic Services, LLC ("Advanced"), a well service operation, to work on one of SRO's wells in Texas. Dkt. No. 13-1 at 4. Advanced used STI to transport equipment in connection with its well service operation on SRO's well. *Id.* Advanced requested that SRO pay STI directly for the transportation services to avoid Advanced having to re-bill the STI's invoices through its own invoicing to SRO. *Id.* On

---

[1] SRD's name has changed. It is now operating as TTR Drilling, LLC. Dkt. No. 19-1 at 1.

September 30, 2015, SRO submitted a credit application to STI in connection with services that STI would be providing for SRO. *Id.* at 3; Dkt. No. 8-2. The application was approved and STI created and maintained an "open account" for SRO whereby STI would deliver and provide oilfield goods and services on credit and SRO was to remit payment within thirty days of receiving STI's invoices. Dkt. No. 8-2; Dkt. No. 17-1 at 3; Dkt. No. 17-3. Under this arrangement, STI transported drilling rigs and related equipment for Advanced/SRO between September 2015 and June 2019.[2] *Id.*

STI began transporting drilling rigs and related equipment for SRD in June 2017. Dkt. No. 17-1 at 3; Dkt. No. 17-4; Dkt. 17-5; Dkt. No. 24 at 4. STI alleges that it did so at the request of SRO. Dkt. No. 17 at 8. STI understood that SRD was an affiliate of SRO and that it was providing services to SRD on credit under SRO's account.[3] Dkt. No. 8 at 2-3; Dkt. No. 17 at 8. STI

---

[2] Invoices from STI reflect that transportation services were provided for Advanced/SRO on a regular basis from September 2015 through November 2017. Dkt. No. 17-3 at 1-65. There is one invoice for transportation services provided for Advanced/SRO in June 2019. *Id.* at 66-70.

[3] While SRO disputes that it is affiliated with SRD, SRO and SRD share the same corporate address in Corpus Christi, Texas. Dkt. No. 8 at 1; Dkt. No. 24 at 1-2. Roger S. Braugh, Jr., who is the sole member and Manager of SRO, is also the President of SRD. Dkt. No. 13-1 at 1; Dkt. No. 19-1 at 1. Jonathan Floyd, who has served as Vice President and currently serves as Chief Operating Officer of SRO, is also the Chief Operating Officer of SRD. Dkt. No. 17-6 at 2; Dkt. No. 19-1 at 2. Mr. Floyd signed the original application for a credit account with STI on behalf of SRO, and STI alleges that he also signed all checks submitted on behalf of SRO and SRD. Dkt. No. 8-2 at 4; Dkt. No. 17-3; Dkt. No. 17-4. STI billed all SRD invoices under SRO's credit account and payment was remitted by SRD without objection, until June 26, 2019, after payment of the past due balance on SRO's credit account, which exceeded $270,000, was demanded. Dkt. No. 17-4; Dkt. No. 23-1 at 2, 4, 6-21. In a letter dated June 26, 2019, SRD requested that STI direct billing for SRD invoices to SRD, rather than to SRO. Dkt. No. 23-1 at 4. However, by that time, STI was no longer providing services to either SRO or SRD, as SRO's credit account was frozen due to non-payment of the past due balance. *Id.* at 2. The Court is not persuaded that SRO clearly delineated a distinction between SRO and SRD. However, this issue need not be resolved for the purpose of the motion to dismiss. This Order does not address the merits of STI's claims against SRO for liability on the outstanding invoices.

transported drilling rigs and related equipment for SRD between June 2017 and May 2018. Dkt. No. 17-1 at 3; Dkt. No. 17-4; Dkt. No. 17-5; Dkt. No. 24 at 4.

STI initiated this action on January 22, 2020, in the District Court of Tulsa County. Dkt. No. 2-3 at 1-5. The case was removed to this Court on February 21, 2020. Dkt. No. 2. STI filed an amended complaint on February 27, 2020, alleging that, despite its demands, SRO and SRD have refused to pay fifteen invoices related to transportation services provided by STI and that the principal amount due on the invoices is $247,037. Dkt. No. 8 at 4; Dkt. No. 8-1. STI asserts claims for: (1) breach of contract; (2) collection upon an open account; (3) unjust enrichment; and (4) negligent misrepresentation. Dkt. No. 8 at 5-9. STI contends that venue is mandatory in this Court due to a forum selection clause that appears on each of its invoices. *Id.* at 2. SRO seeks dismissal of the claims against it pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Dkt. No. 13. SRO argues that the forum selection clause is unenforceable, and that SRO does not have sufficient minimum contacts with Oklahoma for the Court to exercise personal jurisdiction over it. *Id.* at 2-6; Dkt. No. 19 at 2-10.

**II.     STANDARD**

Motions to dismiss under Rule 12(b)(2) test the plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 153-54 (2d Cir. 1999) (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction"). "[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995). Where jurisdiction is "decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing" of facts that would support the assertion of jurisdiction. *Id.* "The allegations in the complaint must

be taken as true to the extent they are uncontroverted by the defendant's affidavit." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). However, upon a defendant's presentation of credible evidence through affidavits or other materials suggesting the lack of personal jurisdiction, the plaintiff must come forward with sufficient evidence to create a genuine dispute of material fact on the issue. *See Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir.1992). The Court will only weigh factual disputes in favor of the plaintiff if the plaintiff meets its burden of contesting the credible evidence presented by the defendant. *See Wenz*, 55 F.3d at 1505; *Behagen*, 744 F.2d at 733.

### III. DISCUSSION

#### A. The Law Regarding Personal Jurisdiction

##### 1. Burden of Proof

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *See* 12 O.S. § 2004(F); *see Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) ("The party seeking to establish personal jurisdiction over a foreign litigant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment."). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988)); *Hough v. Leonard*, 867 P.2d 438, 442 (Okla. 1993).

**2. Due Process and Personal Jurisdiction**

The personal jurisdiction due process analysis consists of two steps. First, the Court considers "whether the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010) (internal quotation marks and citation omitted). A defendant may have minimum contacts with the forum state in one of two ways, providing in turn either general or specific personal jurisdiction. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996) (internal quotation marks and citations omitted). Second, the Court considers whether exercising personal jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice." *Employers Mut. Cas. Co.*, 618 F.3d at 1160.

    a. **Step 1 – Minimum Contacts**

A court may exercise general or specific personal jurisdiction depending on the character and extent of a defendant's contacts with the forum state. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). "General jurisdiction is based on an out-of-state defendant's continuous and systematic contacts with the forum state, and does not require that the claim be related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (internal quotation marks and citation omitted).

STI does not argue that the Court has general jurisdiction over SRO, and the Court does not find that it could exercise general jurisdiction over SRO. To give rise to general jurisdiction, a defendant's contacts with the forum state must be so continuous and systematic that the defendant is "essentially at home in the State." *Xmission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). STI has offered no evidence that SRO conducts business with any other Oklahoma entity

and SRO does not maintain an office in Oklahoma. SRO is a foreign limited liability company, whose sole member is domiciled in Texas. Dkt. No. 8 at 1; Dkt. No. 13-1 at 1. STI does not dispute that SRO does not conduct business in Oklahoma and the Court finds that SRO's contacts with Oklahoma are not so systematic and continuous that it could generally expect to be sued in the state. Dkt. No. 17 at 13-15.

As the requirements of general jurisdiction are not met here, only the requirements of specific jurisdiction are at issue. Specific jurisdiction "is premised on something of a *quid pro quo*: in exchange for benefitting from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Id.* (emphasis in original) (internal quotation marks and citation omitted). A court may assert specific jurisdiction "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks and citation omitted). This inquiry involves a two-part test: "[f]irst ... the out-of-state defendant must have purposefully directed its activities at residents in the forum state, and second ... the plaintiff's injuries must arise out of defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071.

In assessing minimum contacts in the context of contract disputes, the Court considers the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008); *see Rudzewicz*, 471 U.S. at 479.

b. **Step 2 - Traditional Notions of Fair Play and Substantial Justice**

Only if the Court finds minimum contacts with the forum state under the first step of the due process analysis does it continue to the second step of the analysis: "whether the exercise of

6

personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Employers Mut. Cas. Co.*, 618 F.3d at 1160 (internal quotation marks and citation omitted). At this stage the defendant bears the burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Dudnikov*, 514 F.3d at 1080. In deciding whether the exercise of jurisdiction would be fair the Court considers: "(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies." *Id.* (brackets omitted); *see OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998).

**B. SRO's Contacts with Oklahoma**

In this case, personal jurisdiction is disputed, which places the burden of proving jurisdiction squarely upon STI. *See Wenz*, 55 F.3d at 1505 ("[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists."). This requires STI to "make a prima facie showing of facts that would support the assertion of jurisdiction." *Id.* (internal quotation marks and citation omitted). In support of its argument for personal jurisdiction, STI has submitted: (1) SRO's application for credit; (2) invoices, bills of lading, and checks from SRO indicating that from September 2015 to June 2017, STI billed approximately twenty-nine invoices to SRO's account for transportation of oil and gas related equipment within the state of Texas on behalf of Advanced/SRO, which were paid by SRO [Dkt. No. 17-3]; (3) invoices, bills of lading, and checks from SRD indicating that from June 2017 to March 2019, STI billed approximately twenty-nine invoices to SRO's account for transportation of oil and gas related

equipment within or between the states of Louisiana and Texas on behalf of SRD, which were paid by SRD [Dkt. No. 17-4]; and (4) invoices and bills of lading indicating that STI billed fifteen invoices to SRO's account for transportation of oil and gas related equipment within the state of Texas on behalf of SRO and SRD[4] which remain unpaid.[5] Dkt. No. 8-1.

This evidence does not show that SRO purposely directed its activities at Oklahoma residents or that the claims in this case arose from any such directed activities and is therefore insufficient to support STI's argument for the exercise of personal jurisdiction in this case. *See Rudzewicz*, 471 U.S. at 472. STI contends that SRO directed its activities at Oklahoma residents by pursuing a business relationship with STI and submitting a credit application to STI's corporate headquarters in Keifer, Oklahoma. Dkt. No. 17 at 14. However, it is not clear from the record how or where SRO's credit application was submitted. Dkt. No. 8-2. There is no evidence in the record from which the Court can determine whether the application was submitted through the mail, facsimile, or electronic means; nor is there evidence from which the Court can determine whether the application was received or processed in Oklahoma or elsewhere. A review of the application form reveals that the words "STI Trucking, LLC DBA Stone Trucking Keifer, Oklahoma" are printed at the bottom of each page, but the form does not list an Oklahoma address for STI's corporate headquarters. *Id.* The only address printed on the application form is the

---

[4] One of the fifteen invoices indicates that it is for services provided to SRO [Dkt. No. 8-1 at 2-3], while the remaining invoices indicate that they are for services provided to SRD [Dkt. No. 8-1 at 4-31]. SRO claims that all fifteen invoices are for services provided to SRD. Dkt. No. 13 at 1.

[5] The parties do not dispute that these invoices have not been paid in full. Dkt. No. 8 at 4; Dkt. No. 8-1; Dkt. No. 13; Dkt. No. 24 at 4. While SRD admits that the invoices have not been paid in the amounts alleged, it claims to have "made substantial payment," and denies that it owes STI $247,037. Dkt. No. 24 at 4.


"remit to" address, which is in Birmingham, Alabama. *Id.* This is insufficient to establish that the application was, in fact, submitted to STI's headquarters in Oklahoma by SRO.

STI also argues that its ongoing business relationship with SRO is sufficient to establish personal jurisdiction, citing *AST Sports*, 514 F.3d 1054 for the proposition that "where the parties pursue a continuous course of dealing, personal jurisdiction may readily be found.". Dkt. No. 17 at 14. STI's reliance on *AST Sports* is misplaced. In that case, the Court considered whether a European distributorship, through its principal, had sufficient minimum contacts with the State of Colorado to permit the exercise of specific jurisdiction on a Colorado business' contract-related claims. *AST Sports*, 514 F.3d at 1059-1060.

The parties in *AST Sports* were in the business of selling health, nutrition and vitamin products. *Id.* at 1055. The plaintiff, AST Sports Science, Inc. ("AST") sued the defendants, CLF Distribution Limited ("CLF") and its president, Robin Holiday. *Id.* Holiday met Paul Delia, the president of AST while they both resided in Colorado. *Id.* Holiday approached Delia about distributing AST's products in England. *Id.* Holiday moved to England and AST entered into a business relationship with CLF whereby AST exported its products to England for distribution by CLF. *Id.* at 1056. Holiday returned to Colorado every few months and attended business meetings with Delia. *Id.* AST opened a bank account in Denver, Colorado for the use and benefit of Holiday and CLF. *Id.* From 1999 through 2005 AST sold products to CLF on a monthly basis. *Id.* Orders were placed by CLF by telephone, email and facsimile. *Id.* On occasion, Holiday or a CLF agent would pick up an order in Colorado. *Id.* The Court found that these contacts were sufficient to permit the exercise of specific jurisdiction in that case. *Id.* at 1060.

This case is distinguishable on the facts. Although STI's corporate headquarters and principal place of business are in Oklahoma, it is a Delaware limited liability company that

9

provides transportation serves for its clients nationwide and in Canada and Mexico and maintains a corporate address in at least one other state. Dkt. No. 8 at 2; Dkt. No. 8-2. With regard to the business relationship between SRO and STI, there is no indication that the principal or any agent of SRO ever maintained a presence in Oklahoma or traveled to the state relative to SRO's business with STI. There is no evidence that SRO conducts business in Oklahoma or with Oklahoma residents other than STI and all of the transportation services provided by STI on behalf of Advanced, SRO and SRD were provided in other states.

In sum, STI has failed to: (1) show that SRO directed its activities to Oklahoma residents; or (2) establish a link between any activity directed at Oklahoma by SRO and the unpaid invoices that form the basis of this litigation. Accordingly, STI has not demonstrated that SRO had minimum contacts with Oklahoma and thus, cannot make a prima facie showing of facts that support the assertion of personal jurisdiction. *Wenz*, 55 F.3d at 1505; s*ee Dudnikov*, 514 F.3d at 1071 (recognizing that to show minimum contacts in the context of specific personal jurisdiction, "[f]irst ... the out-of-state defendant must have purposefully directed its activities at residents in the forum state, and second, ... the plaintiff's injuries must arise out of defendant's forum-related activities." (internal quotation marks and citation omitted)). Since this first step of the personal jurisdiction due process analysis is not met, the Court need not address the second step: "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Employers Mut. Cas. Co.*, 618 F.3d at 1160 (internal quotation marks and citation omitted).

### C. Enforceability of the Forum Selection Clause

A forum selection clause is presumed to be valid and the burden is on the party resisting enforcement to show that enforcement of the clause would be unreasonable under the

circumstances. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir.1992). The party resisting enforcement of a forum selection provision "carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." *Riley*, 969 F.2d at 957. The Tenth Circuit has found that forum selection clauses fall into two general categories: mandatory or permissive. *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir.1997). A mandatory forum selection clause requires suit to be brought in a particular jurisdiction. *See Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 427 (10th Cir. 2006). A permissive forum selection clause permits suit to be brought in a particular jurisdiction, but does not prevent the parties from litigating in a different forum. *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 581-82 (10th Cir. 1997).

In this case, STI included the following mandatory forum selection clause on each of its field tickets to SRO:

> All actions or proceedings instituted by [STI] for the collection of freight charges owed by the shipper, consigner, consignee, or any third party involved in the movement who has failed to pay such charges within 30 days of presentation of the Freight Bill shall be brought in a court of competent jurisdiction in Tulsa County, Tulsa, Oklahoma. Such parties consent and submit to the jurisdiction of the Federal and State Courts located in Tulsa County, Oklahoma. Any cause of action or suit hereunder must be brought by the parties in the Federal or State Court of appropriate jurisdiction in that state. The parties wi[ll] not raise, and hereby waive any defenses based on the venue, inconvenience of the forum, lack of personal jurisdiction, sufficiency of service of process or the like in any cause of action or suit brought in Tulsa County, Oklahoma.

Dkt. No. 17-3.

The field tickets containing this clause were presented to STI employees in the field who signed the field tickets to acknowledge receipt of STI's deliveries. Dkt. No. 17-3; Dkt. No. 17-4. The field tickets were then sent to SRO along with STI's invoices. *Id.* STI argues that this course

11

of dealing demonstrates that SRO was aware of the forum selection clause and acquiesced to its application in all billing related disputes. Dkt. No. 17 at 12. SRO argues that the forum selection clause is unenforceable because SRO never expressly agreed to the forum selection clause and its application would be unreasonable under the circumstances. Dkt. No. 19 at 2-6.

In determining whether a forum selection clause is part of an agreement, a federal court exercising diversity jurisdiction applies state contract law, rather than federal law. *See Black & Veatch Constr'n, Inc. v. ABB Power Generation, Inc.*, 123 F.Supp.2d 569, 577 (D.Kan.2000). As to the question of which state's laws to apply, the parties have both looked to Oklahoma's adoption of the Uniform Commercial Code ("UCC").

Under 12A O.S. § 2-207(2), additional terms to a contract "are to be construed as proposals for addition to the contract." Between two merchants, the terms become part of the contract *unless:* "(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." *Id.* "This Court has previously held that a forum selection clause constitutes a 'material alteration' of an agreement." *Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc.*, No. 09-CV-153-TCK-TLW, 2010 WL 582205, at *6 (N.D. Okla. Feb. 10, 2010); *Saint Francis Home Med. Equip., L.L.C. v. Sunrise Med. HHG, Inc.,* No. 08-CV-224-TCK-PJC, 2009 WL 2461327, *9 (N.D. Okla. 2009). "Such holding is in accord with Oklahoma law and the weight of authority." *Ben-Trei*, No. 09-CV-153-TCK-TLW, 2010 WL 582205, at *6; *see Lively v. IJAM, Inc.*, 114 P.3d 487, 493 (Okla. Civ. App. 2005) (finding that a "forum selection clause materially altered the contract" and was therefore not a part of the contract and citing numerous cases from other jurisdictions); *Galaxy Int'l, Inc. v. White Stores, Inc.*, 88 F.R.D. 311,

321 (W.D. Pa. 1980) ("We view the addition of a choice of law term to this contract as a significant alteration, and therefore, we rule that it did not become part of the contract.").

Here, the credit application and the parties' subsequent course of dealing that STI and SRO formed an agreement which adequately covered essential terms, such as identity of the services provided, price, and method of payment. Dkt. No. 13-1 at 3; Dkt. No. 17-1 at 2-3; Dkt. No. 17-3. STI argues that by accepting and paying its invoices, SRO was aware of and acquiesced to the forum selection clause. Dkt. No. 17 at 12-13. However, STI has not pointed to any evidence that principles of SRO with authority to accept the forum selection clause and bind SRO did so nor has it pointed to any evidence that the field employees who signed for the invoices did so with the intent and authority to bind STI to the forum selection clause. *Id.* The forum selection clause was an additional term to the initial contract; because it was a material term to which SRO did not expressly agree, it was never incorporated into the parties' agreement. Accordingly, the forum selection clause does not provide a basis for STI's claims in this Court.

For the foregoing reasons, the Court concludes that STI has not met its burden to demonstrate that personal jurisdiction exists here, and that SRO has demonstrated that enforcement of the forum selection clause would be unreasonable under the circumstances.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss for Lack of Personal Jurisdiction, filed by Defendant Santa Rosa Operating, LLC [Dkt. No. 13], is GRANTED and Plaintiff's claims against SRO are DISMISSED without prejudice.

**IT IS FURTHER ORDERED** that SRO's motion for a hearing on its motion to dismiss [Dkt. No. 31], is DENIED as moot.

Dated this 1st day of February 2021.

                                            JOHN F. HEIL, III
                                            UNITED STATES DISTRICT JUDGE