IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STI TRUCKING, LLC, d/b/a STONE TRUCKING COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SANTA ROSA OPERATING, LLC, and SANTA ROSA DRILLING, LLC,<br><br>Defendants. | Case No. 20-CV-0073-JFH-CDL |

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss for Lack of Personal Jurisdiction, filed by Defendant Santa Rosa Drilling, LLC ("SRD"). Dkt. No. 56. For the reasons set forth below, the motion is granted.

### I.  BACKGROUND

This case arises from a contract dispute between Plaintiff, STI Trucking, LLC d/b/a Stone Trucking Company ("STI") and Defendants Santa Rosa Operating ("SRO") and SRD.[1] *See generally* Dkt. No. 8. STI is an oversize and heavy haul carrier. *Id.* at 2. SRO is an oil and gas exploration and operating company. Dkt. No. 8-2 at 5. SRO hired Advanced Hydrostatic Services, LLC ("Advanced"), a well service operation, to work on one of SRO's wells in Texas. Dkt. No. 13-1 at 4. Advanced used STI to transport equipment in connection with its well service operation on SRO's well. *Id.* Advanced requested that SRO pay STI directly for the transportation services to avoid Advanced having to re-bill STI's invoices through its own invoicing to SRO. *Id.* On September 30, 2015, SRO submitted a credit application to STI in connection with services that STI would be providing for SRO. *Id.* at 3; Dkt. No. 8-2. The application was approved and STI

---

[1] SRD's name has changed. It is now operating as TTR Drilling, LLC. Dkt. No. 19-1 at 1.

created and maintained an "open account" for SRO whereby STI would deliver and provide oilfield goods and services on credit and SRO was to remit payment within thirty days of receiving STI's invoices. Dkt. No. 8-2; Dkt. No. 17-1 at 3; Dkt. No. 17-3. Under this arrangement, STI transported drilling rigs and related equipment for Advanced/SRO between September 2015 and June 2019.[2] *Id*.

STI began transporting drilling rigs and related equipment for SRD in June 2017. Dkt. No. 17-1 at 3; Dkt. No. 17-4; Dkt. 17-5; Dkt. No. 24 at 4. STI alleges that it did so at the request of SRO. Dkt. No. 17 at 8. STI understood that SRD was an affiliate of SRO and that it was providing services to SRD on credit under SRO's account.[3] Dkt. No. 8 at 2-3; Dkt. No. 17 at 8. STI transported drilling rigs and related equipment for SRD between June 2017 and May 2018. Dkt. No. 17-1 at 3; Dkt. No. 17-4; Dkt. 17-5; Dkt. No. 24 at 4.

---

[2] Invoices from STI reflect that transportation services were provided for Advanced/SRO on a regular basis from September 2015 through November 2017. Dkt. No. 17-3 at 1-65. There is one invoice for transportation services provided for Advanced/SRO in June 2019. *Id.* at 66-70.

[3] While SRO has disputed that it is affiliated with SRD, SRO and SRD share the same corporate address in Corpus Christi, Texas. Dkt. No. 8 at 1; Dkt. No. 24 at 1-2. Roger S. Braugh, Jr., who is the sole member and Manager of SRO, is also the President of SRD. Dkt. No. 13-1 at 1; Dkt. No. 19-1 at 1. Jonathan Floyd, who has served as Vice President and currently serves as Chief Operating Officer of SRO, is also the Chief Operating Officer of SRD. Dkt. No. 17-6 at 2; Dkt. No. 19-1 at 2. Mr. Floyd signed the original application for a credit account with STI on behalf of SRO, and STI alleges that he also signed all checks submitted on behalf of SRO and SRD. Dkt. No. 8-2 at 4; Dkt. No. 17-3; Dkt. No. 17-4. STI billed all SRD invoices under SRO's credit account and payment was remitted by SRD without objection until June 26, 2019, after STI demanded payment of the past due balance on SRO's credit account, which exceeded $270,000. Dkt. No. 17-4; Dkt. No. 23-1 at 2, 4, 6-21. In a letter dated June 26, 2019, SRD requested that STI direct bill SRD invoices to SRD, rather than to SRO. Dkt. No. 23-1 at 4. However, by that time, STI was no longer providing services to either SRO or SRD, as SRO's credit account was frozen due to non-payment of the past due balance. *Id.* at 2. The Court is not persuaded that SRO clearly delineated a distinction between SRO and SRD. However, this issue need not be resolved for the purpose of the motion to dismiss. This Order does not address the merits of STI's claims against SRO for liability on the outstanding invoices.

STI initiated this action on January 22, 2020, in the District Court of Tulsa County. Dkt. No. 2-3 at 1-5. The case was removed to this Court on February 21, 2020. Dkt. No. 2. STI filed an amended complaint on February 27, 2020, alleging that, despite its demands, SRO and SRD have refused to pay fifteen invoices related to transportation services provided by STI and that the principal amount due on the invoices is $247,037. Dkt. No. 8 at 4; Dkt. No. 8-1. STI asserted claims for: (1) breach of contract; (2) collection upon an open account; (3) unjust enrichment; and (4) negligent misrepresentation.[4] Dkt. No. 8 at 5-9. STI contends that venue is mandatory in this Court due to a forum selection clause that appears on each of its invoices. *Id.* at 2.

On March 20, 2020, SRO moved to dismiss the claims against it for lack of personal jurisdiction. Dkt. No. 13. The Court granted SRO's motion on February 1, 2021 and set a scheduling conference for February 22, 2021. Dkt. No. 36; Dkt. No. 37. During the scheduling conference, counsel for SRD indicated that it intended to pursue a personal jurisdiction defense. The Court permitted briefing on the issue of whether the defense was waived since SRD had not sought a decision on the merits earlier. Dkt. No. 40; Dkt. No. 42; Dkt. No. 43; Dkt. No. 44. Ultimately SRD was permitted to file its motion to dismiss for lack of personal jurisdiction, which is now before the Court. Dkt. No. 56.

II. **DISCUSSION**

**A. Waiver of a Personal Jurisdiction Defense**

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, the "plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth

---

[4] STI's claim for negligent misrepresentation was only asserted against SRO, who has been dismissed from the case. Dkt. No. 8 at 7; Dkt. No. 36.

Amendment." *Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*, 203 F.3d 835 (10th Cir. 2000) (internal quotation marks and citation omitted).

Because the requirement of personal jurisdiction represents "an individual right, it can, like other such rights, be waived." *Insurance Corp. of Ireland, Ltd., v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Rule 12(h)(1) of the Federal Rules of Civil Procedure provides that a defense based on lack of personal jurisdiction is waived if not made by motion or included in a responsive pleading. *See* Fed. R. Civ. P. 12(h)(1). This rule "sets only the outer limits of waiver; it does not preclude waiver by implication." *Hunger*, 203 F.3d 835 at *2 (internal quotation marks and citation omitted). "Asserting a jurisdictional defect in the answer [does] not preserve the defense in perpetuity. This defense may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct." *Id.* (alteration in original) (internal quotation marks and citation omitted). In this case neither party disputes that SRD timely asserted the defense by raising the issue in its answer [Dkt. No. 24 at 9].

A personal jurisdiction challenge may also be waived where a defendant substantially participates in the litigation without actively pursuing a Rule 12(b)(2) defense. *See Hunger*, 203 F.3d 835 at *2. Under those conditions, courts have generally determined that a defendant abandons any objection to personal jurisdiction after lengthy participation in litigation. *See, e.g.*, *id.* (concluding that the defendant waived an objection to personal jurisdiction by waiting more than three years to file a Rule 12(b)(2) motion); *Rates Technology Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1309 (Fed. Cir. 2005) (observing that "a party may consent to personal jurisdiction by extensively participating in the litigation without timely seeking dismissal"); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 59 (2d Cir. 1999) (reasoning that the defendant "forfeited its defense of lack of personal jurisdiction by participating in extensive pretrial proceedings and forgoing

4

numerous opportunities to move to dismiss during the four-year interval that followed its inclusion of the defense in its answer").

In determining whether a defendant has waived its personal jurisdiction defense, courts consider all of the relevant circumstances. *Hamilton*, 197 F.3d at 61. The length of time between a defendant's initial assertion of the defense and the time the defendant seeks a ruling on the merits may be a relevant factor, however, is not determinative. *See id.* ("Although the passage of time alone is generally not sufficient to indicate [waiver of the defense], the time period provides the context in which to assess the significance of the defendant's conduct.").

Waiver is typically found where the defendant's conduct throughout the course of litigation "manifests an intent to submit to the court's jurisdiction." *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990); *see Hamilton*, 197 F.3d at 62 (holding that the defendant forfeited its personal jurisdiction defense by actively participating in pretrial proceedings and failing to move for dismissal for lack of personal jurisdiction "despite several clear opportunities to do so during the four-year interval after filing its answer."); *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (holding that the defendants waived their personal jurisdiction defense where they engaged in lengthy discovery and filed numerous motions over the course of two-and-a-half years without actively contesting personal jurisdiction); *Hunger*, 203 F.3d 835 at *2-3 (holding that the defendant waived its personal jurisdiction defense where it actively participated in the litigation, sought affirmative relief, and did not pursue a ruling on its personal jurisdiction defense for three years, by which time most of the claims in the case had been resolved or dismissed).

Courts place particular weight on whether a defendant has requested any form of affirmative relief from the court. *See Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443-44 (3d Cir. 1999) (holding that the defendants submitted themselves to the district court's jurisdiction

5

by seeking affirmative relief in the form of summary judgment, "before securing a determination on their personal jurisdiction defenses."); *Yeldell*, 913 F.2d at 539 (holding that the defendants' conduct manifested an intent to submit to the district court's jurisdiction where the defendants raised the issue of personal jurisdiction on appeal after having "participated in discovery, filed various motions, participated in a five-day trial, filed post-trial motions, all without raising the issue of personal jurisdiction or requesting a ruling on it."); *Ramos v. Foam Am., Inc.*, No. CV 15-980 CG/KRS, 2018 WL 987243, at *5-6 (D.N.M. Feb. 20, 2018) (finding that the defendant did not waive its personal jurisdiction defense despite having participated in discovery and waiting nearly one year to pursue the defense, because the defendant had not sought affirmative relief from the court); *Qassas v. Daylight Donut Flour Co., LLC*, No. 09-CV-0663-CVE-PJC, 2010 WL 1816403, at *3 (N.D. Okla. May 3, 2010) (finding that the defendant did not waive its personal jurisdiction despite having participated in some discovery, where the defendant raised the defense in its initial pleading and did not seek any other relief from the court); *Media Res., Inc. v. Glob. Paper 3834875 Canada, Inc.*, No. CIV-05-1038-C, 2006 WL 8436512, at *1 (W.D. Okla. May 12, 2006) (finding that the defendants did not waive their personal jurisdiction defense where they did not seek rulings on other issues prior to filing a motion to dismiss for lack of personal jurisdiction).

In this case, SRD filed its answer to STI's amended complaint on May 19, 2020 and asserted the Court's lack of personal jurisdiction as an affirmative defense. Dkt. No. 24 at 9. On May 21, 2020, the Court ordered the parties to prepare and file a joint status report ("JSR"), pursuant to this Court's local rule 16.1, and noted that under Rule 26(a)(1) of the Federal Rules of Civil Procedure, the parties' initial disclosures were to be made within 14 days of conferring on the JSR. Dkt. No. 25; *see* Fed. R. Civ. P 26(a)(1); LCvR16.1. On May 21, 2020, the Court ordered

SRD to file a corporate disclosure statement, pursuant to Rule 7.1 of the Federal Rules of Civil Procedure. Dkt. No. 26; Fed. R. Civ. P. 7.1.

In compliance with the Court's orders, SRD filed its disclosure statement on May 26, 2020 [Dkt. No. 27] and the parties filed their JSR on June 19, 2020 [Dkt. No. 29]. SRD reasserted its personal jurisdiction defense in the JSR. *Id.* On July 6, 2020, the Court entered a scheduling order, requiring that the parties engage in a settlement conference sometime after October 1, 2020. Dkt. No. 30. The settlement conference was conducted by a United States Magistrate Judge on January 22, 2021. Dkt. No. 34. According to SRD, it reasserted its personal jurisdiction defense in preparation for and during the settlement conference. Dkt. No. 42 at 4.

After the Court granted SRO's motion to dismiss for lack of personal jurisdiction on February 1, 2021, it vacated the remaining scheduling order deadlines, ordered STI and SRD to prepare an amended JSR, and set a scheduling conference for February 22, 2021. Dkt. No. 37. During the scheduling conference, SRD indicated that intended to pursue a ruling on its personal jurisdiction defense and the Court permitted the parties to submit briefing on the question of waiver. The parties completed briefing on April 12, 2021 [Dkt. No. 42; Dkt. No. 43; Dkt. No. 44] and on May 6, 2021, SRD moved to stay the case management deadlines pending a decision on the waiver issue [Dkt. No. 52]. The Court denied SRD's motion to stay and permitted it to file its motion to dismiss for lack of jurisdiction. *Id.* SRD filed its motion to dismiss on May 14, 2021 and again sought a stay of discovery pending a ruling on the motion. Dkt. No. 61.

STI argues that SRD implicitly waived its personal jurisdiction defense through its conduct by: (1) actively participating in this litigation for over one year; (2) filing an answer and corporate disclosure statement; (3) participating in the filing of two JSRs; (4) making initial disclosures; (5)

7

exchanging witness and exhibit lists; (6) participating in a settlement conference; and (7) appearing for a scheduling conference. Dkt. No. 43 at 4. The Court disagrees.

With regard to STI's claim that SRD "actively participated" in this case for over a year before it sought a determination on its personal jurisdiction defense, the record reflects that SRD first appeared in this case when it filed its answer on May 19, 2020 [Dkt. No. 24] and began to pursue a ruling on the question of personal jurisdiction approximately 9 months later when it sought leave to file its motion to dismiss [Dkt. No. 42]. This alone is not sufficient to establish waiver. *See Hamilton*, 197 F.3d at 61 (recognizing that the passage of time alone is generally not sufficient to indicate waiver of the personal jurisdiction defense).

The Court notes that SRD's participation in this case, *i.e.*, filing a corporate disclosure statement, jointly filing status reports, making initial disclosures, exchanging witness and exhibit lists, and participating in scheduling and settlement conferences, was required by local and federal procedural rules and/or by orders of this Court. *See* Fed. R. Civ. P. 7.1 (requiring a nongovernmental corporate entity to file a disclosure statement); Fed. R. Civ. P. 26(a)(1) (requiring the parties to make initial disclosures); LCvR16.1(b)(1) (requiring that the parties confer and prepare a joint status report); Dkt. No. 25 (ordering the parties to prepare and file a JSR); Dkt. No. 26 (ordering SRD to file its corporate disclosure statement); Dkt. No. 30 (setting case management deadlines and requiring the parties to participate in a settlement conference); Dkt. No. 37 (ordering the parties to prepare and file an amended JSR and to participate in a scheduling conference). Moreover, SRD has asserted its personal jurisdiction consistently throughout the case. Dkt. No. 24 at 9; Dkt. No. 29 at 2-3; Dkt. No. 38 at 1-2; Dkt. No 42; Dkt. No. 56. SRD has twice sought to stay case management deadlines pending a ruling on the personal jurisdiction issue, and it has not sought any form of affirmative relief from the Court.

It cannot be said that SRD's conduct throughout the course of litigation "manifests an intent to submit to the court's jurisdiction." *Yeldell*, 913 F.2d 539. The Court finds that SRD has not waived its personal jurisdiction defense.

**B. Dismissal Pursuant to Rule 12(b)(2)**

Motions to dismiss under Rule 12(b)(2) test the plaintiff's theory and the facts supporting personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 153-54 (2d Cir. 1999) (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction"). "[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Where jurisdiction is "decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing" of facts that would support the assertion of jurisdiction. *Id.* "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavit." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). However, upon a defendant's presentation of credible evidence through affidavits or other materials suggesting the lack of personal jurisdiction, the plaintiff must come forward with sufficient evidence to create a genuine dispute of material fact on the issue. *See Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992). The Court will only weigh factual disputes in favor of the plaintiff if the plaintiff meets its burden of contesting the credible evidence presented by the defendant. *See Wenz*, 55 F.3d at 1505; *Behagen*, 744 F.2d at 733.

### C. The Law Regarding Personal Jurisdiction

#### 1. Burden of Proof

The exercise of personal jurisdiction over a nonresident defendant in a diversity action is appropriate where the plaintiff has proven the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *See* 12 O.S. § 2004(F); *see Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) ("The party seeking to establish personal jurisdiction over a foreign litigant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment."). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988)); *Hough v. Leonard*, 867 P.2d 438, 442 (Okla. 1993).

#### 2. Due Process and Personal Jurisdiction

The personal jurisdiction due process analysis consists of two steps. First, the Court considers "whether the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010) (internal quotation marks and citation omitted). A defendant may have minimum contacts with the forum state in one of two ways, providing in turn either general or specific personal jurisdiction. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996) (internal quotation marks and citations omitted). Second, the Court considers whether exercising personal jurisdiction over the defendant comports with

"traditional notions of fair play and substantial justice." *Employers Mut. Cas. Co.*, 618 F.3d at 1160.

### a. Step 1 – Minimum Contacts

A court may exercise general or specific personal jurisdiction depending on the character and extent of a defendant's contacts with the forum state. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). "General jurisdiction is based on an out-of-state defendant's continuous and systematic contacts with the forum state, and does not require that the claim be related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (internal quotation marks and citation omitted).

STI does not argue that the Court has general jurisdiction over SRD, and the Court does not find that it could exercise general jurisdiction over SRD. To give rise to general jurisdiction, a defendant's contacts with the forum state must be so continuous and systematic that the defendant is "essentially at home in the State." *Xmission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). STI has offered no evidence that SRD conducts business with any other Oklahoma entity and SRD does not maintain an office in Oklahoma. SRD is a foreign limited liability company, whose sole member is domiciled in Texas. Dkt. No. 8 at 1; Dkt. No. 56-1 at 1. STI does not dispute that SRD does not conduct business in Oklahoma and the Court finds that SRD's contacts with Oklahoma are not so systematic and continuous that it could generally expect to be sued in the state.

As the requirements of general jurisdiction are not met here, only the requirements of specific jurisdiction are at issue. Specific jurisdiction "is premised on something of a *quid pro quo*: in exchange for benefitting from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Xmission*,

955 F.3d at 840 (emphasis in original) (internal quotation marks and citation omitted). A court may assert specific jurisdiction "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks and citation omitted). This inquiry involves a two-part test: "[f]irst ... the out-of-state defendant must have purposefully directed its activities at residents in the forum state, and second ... the plaintiff's injuries must arise out of defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071.

In assessing minimum contacts in the context of contract disputes, the Court considers the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008); *see Rudzewicz*, 471 U.S. at 479.

### b. Step 2 - Traditional Notions of Fair Play and Substantial Justice

Only if the Court finds minimum contacts with the forum state under the first step of the due process analysis does it continue to the second step of the analysis: "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Employers Mut. Cas. Co.*, 618 F.3d at 1160 (internal quotation marks and citation omitted). At this stage the defendant bears the burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Dudnikov*, 514 F.3d at 1080. In deciding whether the exercise of jurisdiction would be fair the Court considers: "(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared

12

interest of the several states or foreign nations in furthering fundamental social policies." *Id.* (brackets omitted); *see OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998).

### D. SRD's Contacts with Oklahoma

In this case, personal jurisdiction is disputed, which places the burden of proving jurisdiction squarely upon STI. *See Wenz*, 55 F.3d at 1505 ("[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists."). This requires STI to "make a prima facie showing of facts that would support the assertion of jurisdiction." *Id.* (internal quotation marks and citation omitted). STI argues that SRD established minimum contacts with the State of Oklahoma by: (1) initiating and soliciting a business relationship with STI; (2) continuing a business relationship with STI for a period of years; and (3) communicating with STI personnel, who SRD knew were located in Oklahoma. Dkt. No. 60 at 17-18.

As to the business relationship between SRD and STI, the evidence does not establish that SRD initiated the relationship directly or that it did so knowing that STI was located in Oklahoma. In a declaration submitted with STI's response to SRO's motion to dismiss for lack of personal jurisdiction, Melinda Tramel, the Credit Manager for STI, indicated that an open account was established for SRO in 2015, after SRO's credit application was processed and approved. Dkt. No. 17-1 at 3. According to Ms. Tramel, beginning around June 2017, SRO and SRD personnel requested that STI provide services to both entities under SRO's open account. *Id.* at 3-4. However, STI does not point to a specific communication from SRD in which SRD initially requested STI's services. Moreover, STI did not seek a separate credit application or set up a separate account for SRD. *Id.* at 3-4. Although subsequent communications between the parties and payments made to STI by SRD establish that a business relationship existed, it is not clear

13

from the evidence when or how that relationship was initially formed or what SRD knew about STI's state of residency at the time. Dkt. No. 17-4; Dkt. No. 17-5; Dkt. No. 60-3; Dkt. No. 60-4; Dkt. No. 60-5; Dkt. No. 60-6.

In support of its assertion that SRD established minimum contacts with Oklahoma, STI cites *CITGO Petroleum Corp. v. Wilburn Oil Co.*, No. 08-CV-053-TCK-TLW, 2009 WL 10687965, at *3 (N.D. Okla. Apr. 28, 2009), for the proposition that evidence that a defendant solicited business or created and maintained a contractual relationship with a resident of a forum suggests that the defendant purposely availed itself of the privilege of conducting business in the forum state. Dkt. No. 60 at 15-17. STI's reliance on *CITGO* is misplaced. In that case, the Court considered whether a Mississippi corporation had sufficient minimum contacts with the State of Oklahoma to permit the exercise of specific jurisdiction over contract-related claims brought by a Delaware corporation, whose principal place of business was in Oklahoma. *CITGO*, No. 08-CV-053-TCK-TLW, 2009 WL 10687965, at *1.

The parties in *CITGO* entered into a distributor relationship whereby the plaintiff, CITGO Petroleum Corporation ("CITGO") would sell and deliver certain quantities of gasoline each month to the defendant, Wilburn Oil ("Wilburn"). *Id*. The initial agreement was established when Wilburn submitted a credit application to CITGO's headquarters in Tulsa, Oklahoma. *Id*. Over the course of the parties' relationship, they entered into a number of additional agreements all of which listed CITGO's Oklahoma address, and which included choice of law provisions stating that the agreements "shall be governed by the laws of the State of Oklahoma." *Id*. During the parties' relationship, Wilburn requested that CITGO extend it credit and CITGO made regular requests for updated financial information, which Wilburn submitted to CITGO's Oklahoma address. *Id*.

The court found that Wilburn established minimum contacts with the State of Oklahoma sufficient upon which to base specific jurisdiction based on the evidence showing that: (1) Wilburn entered into a contractual relationship with CITGO with the knowledge that CITGO was located in Oklahoma; (2) the initial credit application was directed to Oklahoma; (3) additional agreements between the parties included a choice of law provision stating that the agreements would "be governed by the laws of the State of Oklahoma"; and (4) after entering into a distributor relationship with CITGO, Wilburn conducted business in Oklahoma, purchasing products from CITGO, seeking credit extensions, utilizing CITGO's Oklahoma-based EFT system to pay invoices, and corresponding on multiple occasions with CITGO's Oklahoma office. *Id.* at *4.

This case is distinguishable on the facts. Although STI's corporate headquarters and principal place of business are in Oklahoma, it is a Delaware limited liability company that provides transportation serves for its clients nationwide, as well as in Canada and Mexico, and it maintains a corporate address in at least one other state. Dkt. No. 8 at 2; Dkt. No. 8-2. With regard to the business relationship between SRD and STI, there is no evidence in the record that establishes precisely how or when the relationship was established. There is also no evidence that SRD knew where STI's corporate headquarters and principal place of business were located at time the relationship was formed.

Another compelling factor present in *CITGO* was the inclusion of the choice of law provisions in the parties' agreements. Here, it is undisputed that the original agreement between STI and SRO did not include a choice of law provision. And although the communications between the parties indicate that at some point SRD was aware that some of STI's personnel were based in Oklahoma, the fact remains that all of the services STI provided for SRD were provided in Louisiana and Texas. Dkt. No. 17-4. Unlike Wilburn in the *CITGO* case, SRD was not

15

submitting all of its communications and billing remittance to Oklahoma. The evidence shows that some of SRD's communications were with STI personnel located in Texas [Dkt. No. 60-2 at 1-2] and at STI's direction, SRD was remitting its payments to Birmingham, Alabama [Dkt. No. 8-2]. Even though STI now claims to have maintained a bank "drop box" in Alabama for convenience, there is no evidence that SRD was aware of this arrangement or that it knew that STI did not have any offices, personnel, or physical presence in the State of Alabama.

In sum, STI has failed to: (1) show that SRD directed its activities to Oklahoma residents; or (2) establish a link between any activity directed at Oklahoma by SRD and the unpaid invoices that form the basis of this litigation. STI has not demonstrated that SRD had minimum contacts with Oklahoma and thus, it cannot make a prima facie showing of facts that support the assertion of personal jurisdiction. *Wenz*, 55 F.3d at 1505; s*ee Dudnikov*, 514 F.3d at 1071 (recognizing that to show minimum contacts in the context of specific personal jurisdiction, "[f]irst ... the out-of-state defendant must have purposefully directed its activities at residents in the forum state, and second, ... the plaintiff's injuries must arise out of defendant's forum-related activities." (internal quotation marks and citation omitted)).

Since this first step of the personal jurisdiction due process analysis is not met, the Court need not address the second step: "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Employers Mut. Cas. Co.*, 618 F.3d at 1160 (internal quotation marks and citation omitted).

### E. Enforceability of the Forum Selection Clause

Forum selection clauses fall into two general categories: mandatory or permissive. *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir. 1997). A mandatory forum selection clause requires suit to be brought in a particular jurisdiction. *See Yavuz v. 61 MM, Ltd.*,

465 F.3d 418, 427 (10th Cir. 2006). A permissive forum selection clause permits suit to be brought in a particular jurisdiction, but does not prevent the parties from litigating in a different forum. *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 581-82 (10th Cir. 1997).

Where a cause of action is based upon diversity of citizenship, the federal court must apply the forum state's choice of law rules. *Moore v. Subaru of America*, 891 F.2d 1445, 1448 (10th Cir. 1989); *Jones v. Bistate Bistro Associates, L.P.*, No. 00-CV-882, 2001 WL 965057 at *4 (N.D. Okla. Aug. 9, 2001). Oklahoma's choice of law rules require the Court to apply the law of the state (1) chosen by the parties, (2) where the contract was made or entered into, or (3) the place of performance if indicated in the contract. *Moore*, 891 F.2d at 1449 (internal citations omitted). The parties do not dispute that the contract was formed in Oklahoma or that Oklahoma law applies here. Dkt. No. 60 at 14-15; Dkt. No. 62 at 6-7.

Under Oklahoma law, "[f]orum selection clauses are *prima facie* valid and should be enforced unless they can be shown to be unreasonable under the circumstances of the case." *Adams v. Bay, Ltd.*, 60 P.3d 509, 510-11 (Okla. 2002) (alteration in original) (internal quotation marks and citation omitted). Under this "reasonableness" standard, a forum selection clause may be found invalid where the parties have not negotiated or agreed upon it as a term of their contract. *Howard Fam. Charitable Found., Inc. v. Trimble*, 259 P.3d 850, 862 (Okla. 2011); *see Eads v. Woodmen of the World Insurance*, 785 P.2d 328, 331 (Okla. 1989) (recognizing that "the standard of 'unfair or unreasonable' is 'designed to invalidate clauses' of forum selection which were never negotiated or discussed by the parties."). The party seeking to avoid enforcement of a forum selection clause "has the burden to show its enforcement is unreasonable under the circumstances." *Howard*, 259 P.3d at 862; *see Adams*, 60 P.3d at 510-11.

In this case, STI included the following mandatory forum selection clause on each of its field tickets to SRD:

> All actions or proceedings instituted by [STI] for the collection of freight charges owed by the shipper, consigner, consignee, or any third party involved in the movement who has failed to pay such charges within 30 days of presentation of the Freight Bill shall be brought in a court of competent jurisdiction in Tulsa County, Tulsa, Oklahoma. Such parties consent and submit to the jurisdiction of the Federal and State Courts located in Tulsa County, Oklahoma. Any cause of action or suit hereunder must be brought by the parties in the Federal or State Court of appropriate jurisdiction in that state. The parties wi[ll] not raise, and hereby waive any defenses based on the venue, inconvenience of the forum, lack of personal jurisdiction, sufficiency of service of process or the like in any cause of action or suit brought in Tulsa County, Oklahoma.

Dkt. No. 17-3.

The field tickets containing this clause were presented to SRD employees in the field who signed them to acknowledge receipt of STI's deliveries. Dkt. No. 17-3; Dkt. No. 17-4. The field tickets were then sent to SRD along with STI's invoices. *Id.* STI argues that this course of dealing demonstrates that SRD was aware of the forum selection clause and acquiesced to its application in all billing related disputes. Dkt. No. 60 at 9-10. SRD argues that the forum selection clause is unenforceable because SRD never expressly agreed to the forum selection clause and its application would be unreasonable under the circumstances. Dkt. No. 56 at 9-11; Dkt. No. 62 at 5-7. The Court agrees.

It is undisputed that STI and SRD did not negotiate or agree to include the forum selection clause as an additional term to their original agreement. It is unreasonable for STI to unilaterally add a forum selection clause to the parties' initial agreement by merely including it in its invoices. *See Eads*, 785 P.2d at 331 (recognizing that Oklahoma courts have refused to abide by forum selection clauses where "there was in fact no bargaining on the clause[s] in question."). As to STI's argument that SRD acquiesced to the forum selection clause through its course of dealing, the Court is not persuaded. STI has not pointed to any evidence that principals of SRD with

18

authority to accept the forum selection clause and bind SRD did so nor has it pointed to any evidence that the SRD employees who signed the field tickets or processed payments to STI did so with the intent and authority to bind SRD. *Id.*

Applying the reasonableness standard, the Court finds that the forum selection clause included in STI's field tickets is not enforceable against SRD and does not provide a basis for the Court to exercise personal jurisdiction over STI's claims in this Court. This is especially true in light of the Court's finding that SRD did not have sufficient contacts with the State of Oklahoma such that it would have reasonably anticipated to have been haled into court in the state.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss for Lack of Personal Jurisdiction, filed by Defendant Santa Rosa Drilling, LLC [Dkt. No. 56], is GRANTED and Plaintiff's claims against SRD are DISMISSED without prejudice.

Dated this 13th day of August 2021.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE